Filed 3/13/25  P. v. Radillo CA5
Opinion following transfer from Supreme Court

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>OSCAR RADILLO,<br><br>    Defendant and Appellant. | F083848<br><br>(Super. Ct. No. 15CR-06414)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Merced County.  Paul C. Lo, Judge.

Lilliam Hamrick, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Eric L. Christoffersen and Charlotte Woodfork, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Franson, Acting P. J., Peña, J. and Smith, J.

## INTRODUCTION

This matter is before us on transfer from our Supreme Court for reconsideration in light of *People v. Lynch* (2024) 16 Cal.5th 730 (*Lynch*), which resolved a split among appellate courts regarding the proper standard for evaluating prejudice stemming from noncompliance with the requirements of Penal Code[1] section 1170, subdivision (b)(1), (2), and (3) as modified by Senate Bill No. 567 (2021-2022 Reg. Sess.) (Senate Bill No. 567). In accordance with the direction of the Supreme Court, we have vacated our earlier decision and authorized supplemental briefing from the parties.

Following consideration of our Supreme Court's decision in *Lynch* and the parties' supplemental briefs, we conclude that the trial court's failure to comply with Senate Bill No. 567's amendments to subdivision (b) of section 1170 was erroneous, and that the error was prejudicial. Accordingly, we remand the case back to the lower court for either a retrial on the aggravating factors used to impose the upper term, or resentencing to a different term. To the extent that Radillo argued in his original appeal that the trial court failed to consider evidence of his youth, mental health issues, and history of childhood trauma as mitigating factors (see § 1170, subd. (b)(6)), we find this claim without merit, as the record clearly shows the court did, in fact, consider these factors in its sentencing decision.

## FACTUAL AND PROCEDURAL HISTORY

On August 8, 2016, appellant Oscar Radillo was charged with arson of an inhabited structure (§ 451, subd. (b), count 1); making criminal threats (§ 422, subd. (a), count 2); and false imprisonment by violence (§ 236, count 3). Radillo entered a plea of no contest to counts 1 and 3. The trial court subsequently found Radillo mentally incompetent, accepted his alternative plea of not guilty by reason of insanity, and ordered

---

[1] All further undefined statutory citations are to the Penal Code unless otherwise indicated.

2.

Radillo committed to the Department of State Hospitals "for a maximum period not to exceed eight (8) years eight (8) months."

On November 18, 2021, the trial court granted a motion filed by Radillo to withdraw his plea of insanity. The trial court granted Radillo's motion, finding that he was not advised that his term of commitment may exceed the longest possible term of imprisonment for the underlying crimes. (See *People v. Lomboy* (1981) 116 Cal.App.3d 67.) The court reinstated Radillo's plea of no contest and indicated that it would impose the upper term in state prison. Radillo reentered a plea of no contest to arson (§ 451, subd. (b)) and false imprisonment by violence (§ 236).

On January 27, 2022, following argument by the parties, including a discussion of mitigating and aggravating factors relevant to Senate Bill No. 567 and Assembly Bill No. 124 (2021-2022 Reg. Sess.) (Assembly Bill No. 124), the trial court sentenced Radillo to the upper term of eight years for arson, and one-third the middle term of eight months for false imprisonment by violence, to run consecutively.

Radillo appealed, arguing in part, that the trial court failed to comply with Senate Bill No. 567 and Assembly Bill No. 124, and that he was entitled to a new sentencing hearing. We affirmed his conviction on appeal in an unpublished decision, agreeing that the trial court erred by failing to comply with Senate Bill No. 567's amendments to section 1170, but finding the error harmless. (See *People v. Radillo* (Apr. 17, 2023, F083848) [nonpub. opn.].)

On June 28, 2023, a petition for review filed by Radillo in the California Supreme Court was granted.

On December 11, 2024, our Supreme Court transferred the matter back to this court for reconsideration in light of *Lynch*.

## DISCUSSION

### I. The Trial Court's Failure to Comply with Senate Bill No. 567

In Radillo's original appeal, we determined that the trial court did not comply with subdivision (b) of section 1170, observing that Radillo did not stipulate to all relevant facts found true, nor did he waive his right to a jury trial on the aggravating factors found true by the trial court. (See *People v. Radillo*, *supra*, F083848.) Radillo was sentenced after Senate Bill No. 567 went into effect, and the enactment was discussed at his sentencing hearing. However, he did not waive his right to a jury trial on the presence of the aggravating factors, nor did he enter a stipulation to all of the facts underlying those circumstances.[2]

We originally found the error harmless in light of the strong evidence presented at Radillo's sentencing hearing supporting the aggravating factors on which the trial court relied in imposing the upper term, including, some facts which Radillo had admitted. However, following reconsideration of the issue in light of our Supreme Court's decision in *Lynch*, we conclude that the error was not harmless. We will therefore remand this matter back to the lower court for further proceedings.

#### A. Background

The following recitation of facts is derived from this court's unpublished opinion in *People v. Radillo*, *supra*, F083848:

---

[2] Subdivision (b)(2) of section 1170 provides, in part: "The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."

*The Underlying Offense*

The following statement of facts is derived from the reporter's transcript from Radillo's preliminary hearing, which occurred on July 25, 2016:

On November 27, 2015, Radillo, schizophrenic and delusional, accused his father, R.R., of poisoning his food. Radillo spilled food all over his bed. When his father questioned him about it, Radillo began to get angry. R.R. tried to leave the room, which further angered Radillo. Radillo told his father, " 'You going nowhere.' " As R.R. tried to leave, Radillo punched him in the mouth. When R.R. moved to another door, R.R. punched him in the ribs. R.R. eventually managed to get out of the house as Radillo said, " '[T]his is a warning. Next time I kill you.' "

R.R. went into a nearby field and called the police. As he waited for the police to arrive, he saw smoke coming from his home. R.R. tried to put the fire out, but he was unsuccessful. The house burned down.

*The Mental Health Report*

A report prepared pursuant to section 1026, subdivision (f) was made part of the record.[3] The report, dated December 6, 2021, states that since the last progress report, there were minimal changes to Radillo's status. According to the report, Radillo "continues to lack insight into his mental illness and need for treatment."

Under "*Psychiatric status*," the report states that Radillo "has remained psychiatrically unstable," and that he "has primarily been experiencing chronic delusional beliefs about women and religion."

Radillo stated that he wanted " 'to sleep with 1000 women and save them from going to hell' " and he had been exercising daily for this purpose. Radillo commented that women " 'are she-devils who will make [him] sacrifice animals, but [he] will have to do it because they will make [him]. It says so in the Bible.' " He also stated that these women would make him " 'burn incense to summon demons.' "

---

[3] Section 1026, subdivision (f) provides: "If the defendant is confined in a state hospital or other treatment facility as an inpatient, the medical director of the facility shall, at six-month intervals, submit a report in writing to the court and the community program director of the county of commitment, or a designee, setting forth the status and progress of the defendant."

The report notes that Radillo has not engaged in any assaultive behaviors and that he has generally been pleasant and followed directions. However, while he has been willingly taking his medication, he was refusing to participate in any program that he perceived to be treatment. The report states that Radillo "does not believe he has a mental illness … and he has not been motivated to attend groups."

Under "VIOLENCE RISK ASSESSMENT," the forensic evaluator concluded that "[i]f Mr. Radillo were to be moved to a different setting (e.g., prison, CONREP, straight release, etc.), the severity of his symptoms and his limited coping abilities would increase his risk for being a danger to others, and it would also increase his risk for victimization (e.g., sexual exploitation)."

### *The Sentencing Hearing*

On January 27, 2022, the trial court held Radillo's sentencing hearing. The hearing occurred after Senate Bill No. 567 and Assembly Bill No. 124 went into effect, and therefore, applied prospectively to Radillo's sentence.

At the hearing, Radillo's family addressed his history of mental health issues, and claimed that he had suffered mental and physical abuse as a child. Radillo's brother told the court that he would assume responsibility for Radillo's care if Radillo were to be released, with support from other family members.

Trial counsel discussed Senate Bill No. 567 and Assembly Bill No. 124, and the application of these newly enacted laws to Radillo's sentence. She explained that Senate Bill No. 567 "require[s] the Court to impose a term of imprisonment not exceeding the middle term unless there are circumstances in aggravation that have been either stipulated to by the Defendant or found true beyond a reasonable doubt at trial by a jury or a judge in a court trial." Trial counsel added that the trial court would presumably be able to base factors in aggravation and mitigation of Radillo's sentence upon the preliminary hearing transcript, and reports and statements submitted by the defense or the victim (R.R.) and the victim's family. Trial counsel stated, "[n]othing at this point has been stipulated to by the Defendant as to specific aggravating factors, but I believe the Court has reviewed the preliminary hearing transcript. That included the testimony of his father, who is essentially the victim or complaining witness in this case."

Trial counsel observed that two factors in aggravation arguably applied, including: Radillo's threat to his father, which may constitute a "threat of great bodily harm" (Cal. Rules of Court, rule 4.421(a)(1)), and the destruction of R.R.'s home, which would likely qualify as damage of "great monetary value" (rule 4.421(a)(9)). However, she emphasized that there were multiple mitigating factors applicable, including: the fact that Radillo had no prior criminal record (rule 4.423(b)(1)); he was suffering from schizophrenia, which was documented by family members and mental health reports (rule 4.423(b)(2) & (4)); he voluntarily acknowledged wrongdoing at an early stage (rule 4.423(b)(8)); and that he is ineligible for probation, and but for his ineligibility, probation would likely have been granted (rule 4.423(b)(9)).

Trial counsel further observed that section 1170, subdivision (b)(6), added by the enactment of Assembly Bill No. 124, required the court to impose the low term of incarceration if Radillo's youth was a contributing factor to the offense. Under the statute, "youth" is defined as being under the age of 26 at the time of the offense. (See § 1016.7.) Radillo was 20 years old when the crime occurred.

With respect to Radillo's mental health issue, trial counsel stated that the court was permitted to consider the mental health report from the Department of State Hospitals in its sentencing decision and she referred to findings within the report throughout her argument. Trial counsel acknowledged that Radillo had made statements that were "delusional and concerning," and admitted that "he's not in remission at this time." However, she opined that he did "not appear to be acting on these [delusions] in any way that creates a risk to himself or others." Trial counsel remarked, "[Radillo] is medication compliant and these delusions don't seem to have led to any actual issues."

According to trial counsel, "[t]he big concern here really is, if he gets upper term, he will still have time left in prison and he will go to [the California Department of Corrections and Rehabilitation]." Trial counsel added that the California Department of Corrections and Rehabilitation (CDCR) lacks significant mental health treatment. Alternatively, if Radillo were to be released, she asserted that Radillo could participate in an outpatient treatment program, which his family was committed to.

The prosecutor agreed that the trial court could take the mental health report into consideration in its sentencing decision. He explained the report could be considered under factors that reasonably relate to the defendant. (See rule 4.421(c) [the court can consider "[a]ny other factors statutorily declared to be circumstances in aggravation or which reasonably

7.

relate to the defendant or the circumstances under which the crime was committed"].)

The prosecutor characterized the hospital report as "concerning." The hospital report stated that if Radillo were moved into a different setting, " 'the severity of his symptoms and his limited coping skills would increase his risk for being a danger to others, and it would also increase his risk for possible victimization.' " According to the prosecutor, the hospital report demonstrated that if Radillo were to be released, he would be a danger to his family and to the community.

Following the parties' arguments, the trial court concluded that imposition of the upper term of eight years was warranted, finding the factors in aggravation outweighed the factors in mitigation. The trial court found that the threat of harm to R.R. had been significant, and the court expressed concern about releasing Radillo to his family and into the community. The trial court explained, "the Defendant does not have any insight and appreciation that he has a mental health issue and he does not acknowledge that." Further, "although he does take medication, he does not participate in any therapy." The trial court stated that Radillo's expressed desire to be released so that he could "sleep with a thousand women" was "very concerning." The court observed that Radillo had been taking active steps to carry out that delusion, including working out every day.

## B. The Trial Court's Error in Failing to Comply with Subdivision (b)(2) of Section 1170 Was Not Harmless

In *Lynch*, our Supreme Court recently held that if a trial court imposes an aggravated term based on facts not proven in accordance with section 1170, subdivision (b), the sentence must be vacated and the case remanded unless we can conclude, beyond a reasonable doubt, that a jury would have necessarily found all aggravating factors relied upon by the trial court to be true. (*Lynch, supra*, 16 Cal.5th at pp. 742-743, 761.) "In making this determination, we may ' "examine[ ] what the jury *necessarily* did find and ask[ ] whether it would be impossible, on the evidence, for the jury to find *that* without *also* finding the missing fact as well." [Citation.]' ... We may also find the omission

8.

harmless if we can conclude beyond a reasonable doubt 'that the omitted [fact] was uncontested and supported by overwhelming evidence.' " (*Id*. at p. 775.)[4]

Here, the trial court found that the upper term was justified based upon the presence of two aggravating factors: First, the crime involved a threat of great bodily harm (Cal. Rules of Court, rule 4.421(a)(1)); and second, that Radillo poses a significant risk of harm to the community and his family (rule 4.421(b)(1)).

Regarding the first aggravating factor, the evidence overwhelmingly demonstrates that Radillo's commitment offense involved a threat of great bodily harm (see Cal. Rules of Court, rule 4.421(a)(1)). During the commitment offense, Radillo punched his father in the mouth and ribs, told him that " '[t]his is a warning. Next time I kill you,' " and started a fire inside of the family's home, causing the home to burn down. Although Radillo observes that his father had fled the home before it burned down and that he did not actually inflict great bodily injury upon him, that does not diminish the gravity of his offenses, or the fact that they involved a threat of great bodily injury. We conclude that this evidence, which was uncontested, supports the court's true finding on this factor. (See *Lynch, supra*, 16 Cal.5th at p. 775.)

With respect to the second aggravating factor, the record contains strong evidence demonstrating that Radillo "has engaged in violent conduct that indicates [he represents] a serious danger to society" (Cal. Rules of Court, rule 4.421(b)(1)). However, our primary concern with respect to this factor is that the most compelling evidence of Radillo's risk of danger—the forensic evaluator's opinion that Radillo's risk of danger to

---

[4] *Lynch* also held that for sentences imposed under the former version of section 1170, subdivision (b), "the record must clearly indicate that the court would have found an upper term justified had it been aware of its more limited discretion." (*Lynch*, *supra*, 16 Cal.5th at p. 743.) Radillo was sentenced after amended section 1170, subdivision (b) had already gone into effect. Because the sentencing court here was aware of its limited discretion, this factor is not relevant here.

9.

others would increase if he were placed in a different setting—was neither stipulated to nor admitted by trial counsel.

The mental health report contains evidence showing that despite being compliant with his medication, Radillo is chronically delusional, he lacks any insight into his mental health disorder, and he refuses to participate in group therapy. Radillo correctly observes that he does not have prior convictions for violent crimes, and that he has not engaged in any assaultive behaviors during his commitment to the Department of State Hospitals. However, the mental health report contains an opinion by the forensic evaluator opining that "[i]f Mr. Radillo were to be moved to a different setting (e.g., prison, CONREP, straight release, etc.), the severity of his symptoms and his limited coping abilities would increase his risk for being a danger to others, and it would also increase his risk for victimization (e.g., sexual exploitation)."

While trial counsel acknowledged that Radillo remained delusional and refused to participate in therapy, they did not concede or agree to the accuracy of the forensic evaluator's assessment. We do not interpret counsel's failure to address the forensic evaluator's opinion as an implicit admission of its validity. Given the facts expressly admitted by trial counsel and the absence of any demonstrated violent behavior despite Radillo's chronic hallucinations, a rational trier of fact could reasonably disagree as to whether this factor was proven beyond a reasonable doubt.

Further, our Supreme Court has cautioned against attempting to determine whether a jury would have found true aggravating circumstances that require " ' "an imprecise quantitative or comparative evaluation of the facts." ' " (*Lynch, supra*, 16 Cal.5th at pp. 775-776.) The Court explained, " ' "[t]o the extent a potential aggravating circumstance ... rests on a somewhat vague or subjective standard, it may be difficult for a reviewing court to conclude with confidence that, had the issue been submitted to the jury, the jury would have assessed the facts in the same manner as did the trial court." ' " (*Id.* at p. 775.)

10.

Based upon the foregoing, we conclude remand for a trial on the aggravating facts, or sentencing to a different term is warranted. (See *Lynch, supra*, 16 Cal.5th at p. 776 [" ' "The proper remedy for this type of failure of proof — where ... [aggravating facts] were 'never tried' to the jury — is to remand and give the People an opportunity to retry" ' " the aggravating facts].)[5] We will therefore remand this matter back to the lower court for that purpose.

## II.    The Trial Court Complied with Assembly Bill No. 124

In his original appeal, Radillo asserted that the trial court failed to consider that certain factors contributed to the commission of the offense (see § 1170, subd. (b)(6)(B)), including the fact that he was 20 years old when the crime occurred, that he has a mental illness, and that he suffered physical and emotional abuse throughout his childhood. We conclude that the record shows the trial court considered the presence of mitigating factors under section 1170, subdivision (b)(6)(B), but determined that "the aggravating circumstances outweigh the mitigating circumstances [such] that imposition of the lower term would be contrary to the interests of justice." (*Ibid.*)

### A.    Relevant Legal Principles

Effective January 1, 2022, Assembly Bill No. 124 amended section 1170 by adding paragraph (6) to subdivision (b), which provides: "Notwithstanding paragraph (1), and unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense: [¶] (A) The person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence. [¶] (B) The person is a youth, or was a youth as defined under subdivision (b) of Section 1016.7 at the time of the commission of the

---

[5] Radillo may also stipulate to the presence of the aggravating factors on remand.

offense. [¶] (C) Prior to the instant offense, or at the time of the commission of the offense, the person is or was a victim of intimate partner violence or human trafficking." (§ 1170, subd. (b)(6).) Section 1016.7, subdivision (b), defines a " 'youth' " as "any person under 26 years of age on the date the offense was committed."[6]

## B.  Analysis

At the sentencing hearing, Radillo's family stated that he had been physically and psychologically abused as a child and they offered testimony describing his history of mental health issues. Further, trial counsel explained how Radillo's schizophrenia-related delusions contributed to his commitment offense. She also advised the trial court that under amended section 1170, it was required to impose the low term of incarceration if certain circumstances were contributing factors to the commission of the offense, including the fact that Radillo was under the age of 26 at the time of the offense. The amendments to which trial counsel was referring were subdivision (b)(6) of section 1170 and section 1016.7, which were added by the enactment of Assembly Bill No. 124. (Stats. 2021, ch. 695, § 5, adding § 1170, subd. (b)(6)(B); Stats. 2021, ch. 695, § 4, adding § 1016.7.)

The trial court acknowledged that Radillo's mental health issue had precipitated the crime and found that it was "a significant factor in mitigation." Nonetheless, the trial court imposed the upper term sentence. The fact that the trial court did not expressly state all of the factors it had considered in concluding "the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice" (§ 1170, subd. (b)(6)) does not mean that it failed to consider Radillo's age at the time of the offense and the fact that he suffered abuse as a child.

---

[6] The Attorney General observes that the amendments to section 1170 making the lower term the presumptive sentence were initially made by Assembly Bill No. 124, but were incorporated into Senate Bill No. 567, which was later enacted.

We do not presume error upon a silent record. To the contrary, " '[a] judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) To prevail, appellants must overcome this presumption by affirmatively establishing prejudicial error. We conclude that upon this record, Radillo has failed to meet his burden.

## **DISPOSITION**

The judgment of conviction is affirmed. The matter is remanded back to the lower court for further proceedings consistent with this opinion.